IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **PAMELA J. HASSBROCK** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. H-08-2606 |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND ORDER

Before the Court in this social security appeal is Defendant's Motion for Summary Judgment and Brief in Support (Document Nos. 13 & 14) and Plaintiff's cross Motion for Summary Judgment (Document No. 15).[1] Having considered the cross motions for summary judgment, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Cross-Motion for Summary Judgment is GRANTED in part, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner is AFFIRMED in part and REMANDED in part pursuant to sentence four, 42 U.S.C. § 405(g), for further proceedings.

**I.     Introduction**

Plaintiff Pamela J. Hassbrock("Hassbrock") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") reducing her Supplemental Security Income ("SSI") benefits.  Hassbrock argues that substantial evidence does not

---

[1] On November 11, 2008, pursuant to the parties' consent, the District Judge transferred this case to the undersigned Magistrate Judge for all further proceedings.  *See* Document No. 6.

support the Administrative Law Judge's ("ALJ") decision that a *bona fide* loan did not exist between Hassbrock and her relatives, who provided in-kind support and maintenance to her. In addition, Hassbrock maintains that in arriving at this decision the ALJ employed incorrect legal standards. In contrast, the Commissioner contends that there is substantial evidence in the record to support the ALJ's decision that Hassbrock did not enter into a *bona fide* loan agreement, that this decision comports with applicable law, and that the ALJ's decision should therefore be affirmed

**II. Administrative Proceedings**

Hassbrock applied for SSI benefits on June 16, 1999, claiming that she had been disabled since January 1, 1989, as a result of a grand mal seizure disorder and mild mental retardation. Hassbrock, in her application, also claimed that she owned no type of resource and received no form of income. (Tr. 38-39).[2] The claim was denied twice, both initially and upon reconsideration but was granted on December 9, 1999, by an Administrative Law Judge ("ALJ"), Judge Philip Kline, on the basis that Hassbrock's disability met the listing requirements of section 12.05C. (Tr. 10, 28, 90). The ALJ also reopened a prior application for SSI filed by Hassbrock in August 1996, and awarded Hassbrock benefits retroactively to August 30, 1996. (Tr. 90).

On January 4, 2000, counsel for Hassbrock informed the Social Security Administration ("SSA") that Hassbrock had been living with her family her entire life, had been unable to work or support herself since at least since November of 1996, and had been supported by her relatives since that time based on the understanding that she would compensate them for her expenses upon receipt

---

[2] "Tr." refers to the transcript of the administrative record.

of SSI. (Tr. 96). On January 4, 2000 Hassbrock's counsel reduced this agreement into writing, which was attached to a letter sent to the SSA on the same date. (Tr. 96). According to the written agreement, each of Hassbrock's four relatives, her mother, uncle, sister, and brother-in-law had contributed $50.00 a month, which went towards Hassbrock's $200 monthly share of living expenses, including food and rent. (Tr. 96). The agreement then went on to state that Hassbrock would repay her relatives for the support she had received from them and would contribute her share of monthly expenses "if and when" she received SSI. (Tr. 96).

On January 10, 2000, the SSA notified Hassbrock by letter that the loan agreement did not meet social security loan agreement policy because it was vague as to the loan amount, there was no indicated plan for repayment, there was not an absolute commitment for repayment stipulated in the agreement, and the loan was based on the occurrence of an uncertain event. (Tr. 97). The SSA determined that Hassbrock had been receiving in-kind support from her relatives and consequently reduced her benefits by one third. (Tr. 230). Hassbrock received two retroactive payments, each reflecting the one third reduction. (Tr. 13). The first payment was dated January 10, 2000, and was in the amount of $6, 144. (Tr. 13). The second payment was dated July 2, 2000, and was in the amount of $6,021.54. (Tr. 13).

On January 12, 2000, counsel for Hassbrock sent notice to the SSA that Hassbrock wished to appeal the Administration's decision. (Tr. 98). On January 25, 2000, Hassbrock filled out a request for reconsideration which she attached to a letter formally notifying the SSA of her decision to appeal. (Tr. 100-101). In response to the appeal, the SSA sent a letter on March 2, 2001, requesting further information. (Tr. 102). On March 7, 2001, in response to the request, Hassbrock's relatives filled out

3

individual loan statements regarding the amount of financial support they had given Hassbrock and the terms of her agreement to repay them. (Tr. 104).

Upon re-examining the case, the SSA issued a decision on April 21, 2001. (Tr. 108). In a letter addressed to Hassbrock, the SSA informed her that the January 12, 2000, decision to reduce her benefits by on third was correct based on the following facts. (Tr. 108).

> For an oral loan to be valid in the State of Texas the agreement must be performed or reduced to writing within 1 year of the date the agreement is made. The loan agreement in this case was made 11/96 yet the first evidence of "performance" occurred 01/04/00. Secondly, an informal loan agreement must be absolute with intent for repayment. On 03/02/01, we requested verification of repayment. We sent verification forms to the parties who lent you the in-kind support income from 11/96 - 01/04/00. The information to us was vague, incomplete and does not support your allegation that a bona fide loan existed. It is determined that the decision made on 01/12/00 was correct. (Tr. 108).

On April 25, 2001, Hassbrock filed an appeal and requested a hearing before an ALJ. (Tr. 111-113). The administration granted her request and the ALJ, John Randolph Martin, held a hearing on July 31, 2002 at which Hassbrock and her sister, Linda, appeared and testified. (Tr. 151). The ALJ, on August 22, 2002, issued a decision finding that the SSA's original decision and the reconsideration decision were correct based on the fact that the loan agreement was vague, there was insufficient evidence to show that Hassbrock had paid back the loan of in-kind support, and the in-kind support Hassbrock had received was income to Hassbrock from her relatives. (Tr. 153). In addition, the ALJ further found that allegations of repayment were vague and based on uncertain events. (Tr. 153). Finally the the ALJ found that Hassbrock's SSI payments were properly reduced under Section 1602 and 1614(a)(3)(A) of the Act. (Tr. 154).

Hassbrock sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. *See* C.F.R. § 404.970; 20 C.F.R. § 416.1470. After considering Hassbrock's contentions pursuant to the applicable regulations and evidence, the Appeals Council, on June 17, 2004, vacated the ALJ decision and remanded for further determination concerning whether Hassbrock had continued to receive in-kind support during the period between 1996 and December 1999, how Hassbrock had spent the two retroactive SSI payments, and whether the one-third reduction should continue to apply to the months following January of 2000. (Tr. 161).

On December 2, 2004, ALJ Thomas G. Norman held a hearing at which Hassbrock appeared and testified. (Tr. 13). The ALJ on February 28, 2005, issued a decision in which he concluded, after considering all of the evidence, that there was no credible evidence of a valid loan. (Tr. 16). Further, the ALJ concluded that Hassbrock's testimony concerning how she spent the two retroactive checks was vague and he noted that she did not have any written documentation showing how the payments were spent. (Tr. 16). Finally, the ALJ concluded Hassbrock did not present any evidence that she had paid at least a pro rata share of household and operating expenses. (Tr. 16). Consequently, the ALJ held that Hassbrock's SSI payments had been properly reduced. (Tr. 16).

Hassbrock again sought review of the ALJ's decision with the Appeals Council. After considering Hassbrock's contentions pursuant to the applicable regulations and evidence, the

5

Appeals Council, on June 11, 2005, concluded that there was no basis upon which to grant Hassbrock's request for review, at which time the ALJ's February 28, 2005, decision became final. (Tr. 4).

Hassbrock then filed a civil action in the United States District Court for the Southern District of Texas, seeking judicial review of the Commissioner's decision. (Tr. 214). On September 29, 2006, the United States District Court for the Southern District of Texas granted the claimant's Motion for Summary Judgment, reversing the decision of the ALJ and remanding for further proceedings pursuant to 42 U.S.C. § 405(g). (Tr. 239). Accordingly, on April 16, 2007, the Appeals Council vacated the February 25, 2005, decision and remanded the case to the ALJ for further proceedings. (Tr. 231).

Following a hearing before ALJ Thomas G. Norman on September 13, 2007, at which the ALJ obtained testimony from Hassbrock, the ALJ again, on November 16, 2007, issued a decision finding insufficient evidence to show the presence of a *bona fide* loan agreement. (Tr. 231, 234).

Hassbrock filed a timely appeal of the ALJ's decision. Both Hassbrock and the Commissioner filed Motions for Summary Judgment (Document No. 14 & 15). This appeal is now ripe for ruling.

**II.    Standard for Review of Agency Decision**

The court's review of a reduction in SSI benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Bormey v. Schweiker*, 695 F.2d 164, 167-68 (5th Cir. 1983). Indeed, Title 42, Section 405(g) of the Act, limits judicial review of the

Commissioner's decision as such: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  While it is incumbent upon the court to examine the record in its entirety in order to decide whether the decision is supportable, the court may not "reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision."  *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979); *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985).  Accordingly, conflicts in the evidence are for the Commissioner to resolve.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

As used in the Act, the U.S. Supreme Court has defined "substantial evidence" to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1983)).  Substantial evidence is defined as "more than a scintilla and less than a preponderance."  *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).  The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices' or 'no contrary medical evidence.' "  *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

**III.     Burden of Proof**

An individual's eligibility for SSI benefits depends in part upon the income of the individual and the value of any resources owned by him or her. *See* 42 U.S.C. § 1382(a), § 1382c(a)(3)(A)-(C); 20 C.F.R. §416.110 and 416.1201.  Although an SSI recipient is paid a flat monthly benefit, that monthly benefit is reduced by the amount of "income" the SSI recipient receives.  *Hassbrock v. Barnhart*, 457 F. Supp.2d 736, 739 (S.D. Tex. 2006).  "Income" is defined as "anything the individual receives in cash or in kind that the individual can use to meet her needs for food, clothing, or shelter." *Id*.  Under the Act, loans are not considered "income" and cash is not considered "in-kind income." *Id*.  "In-kind income" includes food, clothing, shelter, or something used to acquire those commodities.  *Id*.  In addition, "[i]n-kind income which is derived from someone else's payment of a recipient's food, clothing, or shelter" is considered in-kind support and maintenance." *Id*.

There are two rules for valuing in-kind support and maintenance: (1) the "presumed value rule," and (2) the "one-third reduction rule." *Id*. at 746.  The Administration applies the "presumed value rule" when an SSI recipient receives both food and shelter from another person, but is not living in the household of that person. *Id*. at 740.  Under the "presumed value rule", the Administration presumes the in-kind income to be worth a maximum value, which is one-third the recipient's federal benefit rate plus $20. *Id*.  The "presumed value rule" is a rebuttable presumption.  Accordingly, an individual may present evidence that the actual value of the in-kind support at issue is less than the presumed amount.  *See* 20 C.F.R. § 416.1140(a)(2).

The Administration applies the "one-third reduction rule" when an SSI recipient lives in the "household" of a person who provides the recipient with both food and shelter.  *Id.* at 739.

Instead of determining the actual dollar value of in-kind support and maintenance, under the "one-third reduction rule" the Administration counts one-third of the federal benefit rate as additional income (regardless of its actual value). *Id*. Thus, the SSI recipient is subject to a one-third reduction in SSI benefits. *Id*.

The "one-third reduction rule" applies in full or not at all. *See* 20 C.F.R. § 416.1133. The rule does not apply when an individual pays a pro-rata share of the household expenses. *Id*. In addition, when in-kind support and maintenance is provided as a loan, it is not considered income and the "one-third reduction rule" does not apply. *Hassbrock*, 457 F.Supp.2d at 739. Accordingly, an SSI recipient claiming the presence of a valid loan agreement has the burden of demonstrating that any in-kind support received was "loaned to them in realistic anticipation of repayment, and that they indeed intend to repay that debt." *Hickman v. Bowen*, 803 F.2d 1377, 1382 (5th Cir. 1986). The Administration considers a loan to constitute an advance of either cash or in-kind support for which a household member is *obligated* to repay. *See* Social Security Ruling ("SSR") 92-8p (emphasis added).

Here, the ALJ found that Hassbrock received in-kind support and maintenance from her relatives, and that upon application of the SSR 92-8p guidelines, Hassbrock and her relatives had not entered into a *bona fide* loan agreement. In this appeal, the issues presented by Hassbrock are: (1) whether there is sufficient evidence to show the presence of a *bona fide* loan agreement and, whether the ALJ properly applied the SSR 92-8P guidelines in determining that Hassbrock and her relatives had not entered into a *bona fide* loan agreement; and (2) whether the one-third reduction should continue to apply to Hassbrock's SSI payments in the period between January 2000 and March 2005. These issues will be addressed separately.

### V.  Discussion - Existence of a *Bona Fide* Loan

In determining whether substantial evidence supports the ALJ's decision, as to the esxistence of a *bona fide* loan, the Court must apply the guidelines set forth in SSR 92-8p.[3] As stated in SSR 92-8p, for purposes of determining when a loan is not considered income and when a loan is considered a countable resource under the SSI program, the following policies apply:

1.  A loan means an advance from a lender to a borrower that the borrower *must repay*, with or without interest.  A loan can be cash or an in-kind advance in lieu of cash.  For example, an advance of food or shelter can represent a loan of the pro rata share of household operating expenses.  This applies to any commercial or noncommercial loan (between relatives, friends, or others) that is recognized as enforceable under State law.  The loan agreement may be oral or written, as long as it is enforceable under State law.

2.  Any advance an SSI applicant or recipient receives that meets the above definition of a loan is not income for SSI purposes since it is subject to repayment.  Any portion of borrowed funds that the borrower does not spend is a countable resource to the borrower if retained into the month following the month of receipt.

3.  When money or an in-kind advance in lieu of cash is given and accepted based on any understanding *other than that it is to be repaid by the receiver*, there is no loan involved for SSI purposes.  It could be a gift, support payments, in-kind support and maintenance, etc., and must be treated as provided for in the rules applicable to such terms.

4.  If there is a bona fide loan as defined in (1) above, there is a rebuttable presumption that the loan agreement is a resource of the lender for SSI purposes.  For example, an SSI applicant or recipient reports making a loan to a relative.  The loan agreement is oral.  The oral agreement is found to be binding under State law.  Accordingly, the loan is presumed to be a resource of the lender because it can be converted to cash if the lender calls for repayment from the borrower.  The lender can rebut this presumption by showing that the loan cannot be converted to cash - for example, because the borrower died without leaving an estate.

---

[3] SSR 92-8p: Policy Interpretation Ruling Title XVI: SSI Loan Policy, Including Its Applicability To Advances of Food and/Or Shelter.

5. Money a lender receives as repayment of a loan (which meets the definition of a resource) reduces the outstanding loan balance and is considered a countable resource to the lender in as much as the repayment amount represents a return of part of the loan principle; i.e., the total value of the resource, which is the repayment amount plus the outstanding loan balance, remains unchanged.

6. Interest on a loan is counted as unearned income to the lender in the month of receipt and, if retained, is a resource as in (2) above.

(emphasis added).

Evidence must be obtained with respect to the existence of a *bona fide* loan agreement. *See* SSR 92-8p. It is undisputed that Hassbrock had received in-kind support and maintenance from her relatives in the form of household expenses, food, and mortgage payments for the house in which they resided from August of 1996 through December of 2000. Thus, the issue in this case is whether Hassbrock presented sufficient evidence to show that she and her relatives entered into a *bona fide* loan agreement to the effect that the support the relatives provided her constituted a loan within the meaning of SSR 92-8p.

As the SSI recipient, the burden of proof with respect to the showing of a *bona fide* loan was on Hassbrock. In this case, Hassbrock had three administrative hearings, one on July 31, 2002, one on December 2, 2004, and the last on September 11, 2007. Hassbrock was represented by counsel and testified at all three hearings. The transcript of the hearing on July 31, 2002, reveals that the following testimony was adduced concerning Hassbrook's contention that she entered into a loan with her relatives.

Examination of Claimant by Attorney:

Q: Ms. Hassbrock, prior to getting your Social Security disability, how were you being kept up? How were you being supported?
A: My mother was alive and she would always give me money.

>Q: Well, did your sister help you also?
>A: Linda and David, they would always give me money.
>Q: And you lived in the same place that you live now?
>A: I lived in the same house
>Q: With them?
>A: Um-hum.  In the same house and everything.
>Q: Okay.  And you've been applying for Social Security for - -
>A: A long time
>Q: Was it - - did you intend to repay your sister and you mother?
>A: Yes, sir
>Atty: That's all I have judge
>
>(Tr. 205-206).

Hassbrook further testified to the conditions of her repayment to her relatives for their support on December 2, 2004.  (Tr. 224-225).  The testimony is as follows:

>Examination of Claimant by Attorney:
>
>Q :Okay.  What about now back - - I mean, what about your relatives?  Like, before she died, your mother, and your sister, and your brother-in-law, and so forth?  Did you - -
>A: I paid them all back, but they didn't give me no written receipts or nothing
>Q: Did you pay them in cash?
>A: Yes
>Q: You did, okay.  Prior to that they were - - I mean, prior to your getting the SSI checks, they were making all of the bills, were they not?
>A: Yes.
>Q: You didn't - - did you have any income at all?
>A: Not at the time until I started getting - -
>Q: Not until you started getting your SSI?
>A: Right
>Q: Okay
>A: Basically, they were helping me out until I could get on my feet.  And when they started helping me with the SSI, I'd try to help them slowly to just get out of debt just to - -
>
>(Tr. 224 - 225).

Hassbrock did not meet her burden of showing that the in-kind support she received from her relatives was pursuant to a *bona fide* loan agreement. For instance, Hassbrock did not provide testimony specifying the amount loaned, the period of time covered, or the terms of repayment either in the written agreement she presented on January 4, 2000, or in later statements. Further, the written agreement she presented on January 4, 2000, was not specific concerning the amount loaned, the period of time covered, or the terms of repayment. Therefore, while Hassbrock did present a written agreement, it did not meet social security loan policy because it was vague as to the terms and conditions of the loan agreement.

The ALJ's decision that a *bona fide* loan agreement did not exist is supported by substantial evidence. The ALJ, as was his province and obligation, weighed all the evidence and testimony in the record, and concluded that Hassbrock presented insufficient evidence to show that a *bona fide* loan agreement existed between herself and her relatives. In justifying this decision, the ALJ, Thomas G. Norman wrote:

> The undersigned has considered all the evidence of record, and the prior determination is affirmed. It is concluded that from November 1996 through December 1999 the claimant had no income, and there is no credible evidence of a valid loan of in-kind support and maintenance. The claimant received retroactive payments of $12,165.54 for supplemental security income in January and July 2000, yet her testimony at the hearings regarding how the money was spent was vague, and counsel advised that there was no written documentation of how the retroactive payments were spent. Further, no family member has stated under oath as to whether there was a loan and, if so whether it was repaid
> (Tr. 233).

A review of the record indicates that Hassbrock had the opportunity to present adequate evidence of an alleged *bona fide* loan agreement, but failed to do so. The ALJ, therefore,

13

correctly found that Hassbrock presented insufficient evidence to support the finding of a *bona fide* loan agreement.  Thus, substantial evidence in the record supports the ALJ's decision.

### VI.  Discussion - Evidence of Payment of Pro Rata Share of Expenses

In his decision Judge Norman also concluded that "the claimant did not present any evidence that from January 2000 to March 2005 she paid at least a pro rata share of household and operating expenses."  (Tr.  233).  In her testimony on July 31, 2002, Hassbrock testified about the average breakdown of her household operating expenses, as well as how much she contributes towards those expenses.  (Tr.  199-202).

> Examination of claimant by Administrative Law Judge:
>
> Q: Okay, all right.  The question that's kind of before us is sort of how do you make ends meet, and who pays for the rent, and that sort of thing.  So that's the kind of questions I'm going to be asking you.  Okay?
> A: Okay.
> ****
> Q: Now how much is the rent?
> A: 600
> Q: Okay.  Is that a mortgage payment or a rent payment?
> A: Rent payment
> ***
> Q: Okay, what about the expenses?  Do you have any idea what your sort of  total expenses are during the month?
> A: We spend at the store on groceries around 2, 300.  On the lights we spend anywhere from 2 to 300, I believe, on it, if not more.
> Q: Okay
> A: On the gas bill it's like 50 or 60.  If we need any other stuff, then I try to put what money I have left into it.
> Q: Okay
> A: And that leaves me broke
> Q: And so the money that you're talking about, where does that come from?
> A: My uncle, and then plus what check I got coming in.
> Q: Okay.  So we're talking - - so the money that you're putting into it is your SSI?
> A: Yes

> \*\*
> Q: Okay. Okay, and what about your sister and her husband? Do they contribute to the income?
> A: What they can, they do.
> \*\*\*
> Q: Thank you. So you got four sources of income for the group of the four of you?
> A: Um-hum
> Q: Okay. Your Social Security check, the two checks from your uncle, your sister's income, and your - - from her job, and your sister's husband's income.
> A: Um-hum
>
> (Tr. 199-202).

Additionally, in her testimony on December 2, 2004, Hassbrock stated that she had been paying her pro rata share of household expenses since January of 2000. (Tr. 221).

> Examination of Claimant by Attorney:
>
> Q: Has your rent gone up since back in 2000?
> A: Yes. Right now I'm paying $370. $300 for rent.
> Q: How much are you getting together from SSI?
> A: $376
> Q: At this point in time?
> A: At this point in time
> Q: And well, how much do you contribute toward the rent?
> A: 300. And the rest of it goes –
> Q: Okay. Contribute toward the groceries?
> A: – lights, the water, and part of it on groceries
>
> (Tr. 221).

Finally, on September 11, 2007, Hassbrock further testified that she paid for her pro rata share of the household expenses. (Tr. 277-276).

> Examination of Claimant by Attorney:
>
> Q: And how about your expenses of the house, were you contributing to that with your SSI?

15

> A: Between me and Francis, we would, Francis would pay the rent, and I would help on the lights and the water and the gas.
> Q: Uh-huh.  Were any of these family members that you were living with, were any of them what you would call, did they have extra money or - -
> A: Oh no, no they didn't have extra money
> Q: Was everybody kind of living from one day to the next as far as the money - -
> A: Yes
> Q: - - is concerned?  Nobody had any, any money left over, did they?
> A: No
> ***
> Q: How much were you getting at that in time in our, from your SSI?
> A: 402
> Q: Okay.  How much of that did you have left over after you contributed to the household?
> A: Nothing.
> Q: Okay.  I'm going to ask you now, did it go that way, was that the arrangement until you, March of '05 when you moved out of the house?
> A: Uh-huh
>
> (Tr. 277-276).

In her testimony, Hassbrock was able to give a breakdown of the monthly expenses and was able to account for how much of her SSI income went to payment of her pro rata share of the household bills and expenses.  She further testified that her entire SSI is exhausted each month in the payment of her share of expenses.  The evidence in the record is that Hassbrock contributed to the household expenses from January 2000 to March of 2005.  Because Hassbrock did present evidence that she contributed to the household expenses between January 2000 and March 2005, the ALJ's finding to the contrary is not supported by substantial evidence.  Accordingly, at least with respect to that part of the decision that Hassbrock had not been contributing her pro rata share of household expenses from January 2000 through March 2005 remand is warranted.

16

**VI. Conclusion and Order**

Based on the foregoing and the two separate, discrete issues presented in this appeal, it is ORDERED that Defendant's Cross-Motion for Summary Judgment (Document No. 13) is GRANTED in part,  Plaintiff's Motion for Summary Judgment (Document No. 15) is DENIED,  and the decision of the Commissioner is AFFIRMED in part, and REMANDED in part.

That part of the ALJ decision which concluded that from August 1996 through December 1999 Hassbrock had no income, and there is no credible evidence of a valid loan of in-kind support and maintenance is AFFIRMED.  That part of the ALJ's decision which concluded that Hassbrock did not present any evidence that from January 2000 through March 2005 she paid at least a pro rata share of household and operating expenses is REVERSED and REMANDED to the Commissioner pursuant to sentence four,  42 U.S.C. § 405g, for further proceedings.

Signed at Houston, Texas this 1st  day of Julu, 2009.

Frances H. Stacy
United States Magistrate Judge